**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, ex rel.
KEISHA KELSCHENBACH,

    Plaintiffs,

              v.

M&T BANK CORP.,

    Defendant.

Civ. Action No. 13-cv-0280

**MEMORANDUM OF LAW IN SUPPORT OF RELATORS PATRICK LESTER,
MARLENE MILLER AND PAULINE MYERS' MOTION FOR ATTORNEYS' FEES
AND COSTS PURSUANT TO 31 U.S.C. § 3730(d)(1)**

Robert A. Magnanini
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel:    (973) 218-1111
Fax:    (973) 218-1106
rmagnanini@stonemagnalaw.com

*Attorneys for Sealed Non-Party Intervenor*
*Relators Patrick Lester, Marlene Miller*
*and Pauline Myers*

Dated: February 8, 2017

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.  Section 3730(d)(1) of the False Claims Act Mandates that *Qui Tam* Plaintiffs Recover Attorneys Fees and Expenses ........................................................................... 5

II.  The Amount of Attorneys' Fees Requested is Reasonable and Should be Approved by the Court ................................................................................................... 6

A.  The Lodestar Method ................................................................................................ 6

B.  The Inquiry in the Second Circuit ........................................................................... 7

    *i.*  The Rates Charged in this Case are Reasonable ......................................... 9

        a.  S&M's Attorneys' and Paralegals' Rates are Reasonable for the Relevant Market Based on their Skill, Experience, and Reputation .................................................................................... 9

            i.  Mr. Stone and Mr. Magnanini (Managing Partners) ........... 9

            ii.  Mr. Harrison (Partner) ....................................................... 11

            iii.  Mr. Barnett-Howell and Mr. Muller (Associates) ............. 11

            iv.  Ms. Saybe and Mr. Rawson (Paralegals) ........................... 12

        b.  The Attorneys' and Paralegals' Fees S&M Seeks are Based on Reasonable Hours as Evidenced by Detailed Time Records, Efficient Staffing and the Absence of Unnecessary Charges ........ 13

            i.  No Blanket Percentage Reduction in S&M's Requested Fees Should be Applied .................................... 16

III.  S&M is Entitled to Fees Associated with Litigating this Petition .............................. 16

IV.  S&M is Entitled to the Full Measure of the Reasonable Costs It Incurred in this Litigation ..................................................................................................................... 17

CONCLUSION ........................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Access 4 All, Inc. v. 135 West Sunrise Realty Corp.,*
  No. 06 cv 5487, 2008 U.S. Dist. LEXIS 91674 (E.D.N.Y., Sept. 30, 2008) ...............................15

*Arbor Hill v. Cnty. Of Albany and Albany Cnty. Bd. of Elections,*
  552 F.3d 182 (2d Cir. 2008).................................................................................................7

*Barfield v. New York City Health & Hospitals Corp.,*
  537 F.3d 132 (2d Cir. 2008).................................................................................................8

*Blum v. Stenson,*
  465 U.S. 886 (1984)..........................................................................................................6

*Burr v. Blue Cross and Blue Shield of Florida, Inc.,*
  882 F. Supp. 166 (M.D. Fla. 1995)......................................................................................6

*Cho v. Koam Med. Servs. P.C.,*
  524 F. Supp. 2d 2020 (E.D.N.Y. 2007) ..............................................................................13

*Fialka-Feldman v. Oakland Univ. Bd. of Trus.,*
  No. 08 cv 14922, 2010 U.S. Dist. LEXIS 62031 (E.D. Mich., June 23, 2010) ...........................15

*Finkel v. Omega Commc'n Servs., Inc.,*
  543 F. Supp. 2d 156 (E.D.N.Y. 2008) ................................................................................13

*Fox Indus., Inc. v. Gurovich,*
  No. 03 cv 5166, 2005 U.S. Dist. LEXIS 42232 (E.D.N.Y., Sept. 21, 2005)................................8

*Gagasoules v. MBF Leasing LLC,*
  296 F.R.D. 107 (E.D.N.Y. 2013).........................................................................................7

*Gonter v. Hunt Valve Co.,*
  510cu F.3d 610 (6th Cir. 2007)..........................................................................................5

*Hensley v. Eckerhart,*
  461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).........................................................13

*Johnson v. Georgia Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ............................................................................................7

*Merck Eprova AG v. Gnosis S.p.A.,*
  760 F.3d 247 (2d Cir. 2014)..............................................................................................15

*Microban Products Co. v. API Industries, Inc.,*
  No. 14 cv 41, U.S. Dist. LEXIS 92704 (S.D.N.Y., July 7, 2014).............................................15

*Millea v. Metro-North R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011)............................................................................7

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)............................9

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .....................................................................16

*Morris v. Eversley*,
  343 F. Supp. 2d 234 (S.D.N.Y. 2004)..........................................................16

*Murphy v. Lynn*,
  118 F.3d 938 (2d Cir. 1997)............................................................................8

*Pearson Educ., Inc. v. Vergara*,
  No. 09 cv 6832 (JGK) (KNF), 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y., Sept. 27, 2010) ........7

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*,
  No. 13 cv 2493 (KBF), 2014 U.S. Dist. LEXIS 135600 (S.D.N.Y., Sept. 24, 2014)..................11

*Roberts v. Nat'l Bank*,
  556 F. Supp. 724 (E.D. Mich. 1983)..............................................................14

*Scott v. City of New York*,
  626 F.3d 130 (2d Cir. 2010)..........................................................................13

*Tabatznik v. Turner*,
  No. 14 c 8135 (JFK), 2016 U.S. Dist. LEXIS 42972 (S.D.N.Y., Mar. 30, 2016) ......................12

*Themis Capital v. Democratic Republic of Congo*,
  No. 09 cv 1652 (PAE), 2014 U.S. Dist. LEXIS 124208 (S.D.N.Y., Sept. 4, 2014)..............11, 12

*Themis Capital v. Democratic Republic of Congo, reconsideration denied*,
  No. 09 cv 1652 (PAE), 2014 U.S. Dist. LEXIS 133671 (S.D.N.Y., Sept. 22, 2014)..................11

*TufAmerica, Inc. v. Diamond*,
  No. 12 cv 3529 (AJN), 2016 U.S. Dist. LEXIS 30645 (S.D.N.Y., Mar.9, 2016.........................12

*U.S. ex rel. ATC Distrib. Goup, Inc. v. Ready-Built Transmissions, Inc.*,
  No. 03 cv 2150, 2007 U.S. Dist. LEXIS 65963 (S.D.N.Y., Sept. 7, 2007) ............................6, 16

*U.S. ex rel. Averback v. Pastor Med. Assocs. P.C.*,
  224 F. Supp. 2d 342 (D. Mass. 2002) ..............................................................6

*U.S. ex rel. Bisk v. Westchester Med. Ctr.*,
  No. 06 cv 15296 (LAK) (FM), 2016 U.S. Dist. LEXIS 104412
  (S.D.N.Y., Aug. 5, 2016) ....................................................................2, 10, 12, 13

*U.S. ex rel. Doe v. Acupath Labs., Inc.*,
 No. 10 cv 4819 (LDW) (AKT), 2015 U.S. Dist. LEXIS 34506
(E.D.N.Y., Feb. 27, 2015)......................................................................................8, 10, 16

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*.,
 No. 12 cv 275 (DLC), 2015 U.S. Dist. LEXIS 49477 (S.D.N.Y., Apr. 15, 2015) ...........10, 12, 15

*U.S. ex rel. Greendyke v. CNOS, P.C.*,
 No. 04 cv 4105, 2007 U.S. Dist. LEXIS 72987, (D.S.D., Sept. 27, 2007 .....................................6

*U.S. ex rel. Thompson v. Walgreen Co.*,
 621 F. Supp. 2d 710 ....................................................................................................14

**Statutes**

31 U.S.C. § 3730(d)(1) ..................................................................................................1, 5, 17

**Other Authorities**

Cong. Rec. (Oct. 7, 1986) at H9389 (Statement of Rep. Berman) ..................................................6

Plaintiff-Relators Patrick Lester ("Lester"), Marlene Miller ("Miller"), and Pauline Myers ("Myers") (collectively, "SDNY Relators") respectfully submit this motion for attorneys' fees and expenses from M&T Bank ("Defendant") related to the *Kelschenbach* Settlement Agreement with M&T Bank (the "Settlement") and to be recognized as a prevailing party and one of the primary relators pursuant to 31 U.S.C. § 3730(d)(1).[1]

## PRELIMINARY STATEMENT

SDNY Relators seek through this motion to recover from Defendant attorneys' fees, costs, and expenses for successfully resolving this complex False Claims Act action. As the Government, spurred by the SDNY Relators whistleblowing of systemic fraud at Defendant's mortgage department, recovered over $64 million in fraudulently-obtained taxpayer money, an award of attorneys' fees and expenses is mandatory under the False Claims Act ("the Act"). *See* 31 U.S.C. § 3730(d)(1).

The SDNY Relators are statutorily entitled to reimbursement of the attorneys' fees, costs, and expenses spent successfully pursuing this complex matter over four years, and contributing to a significant recovery of fraudulently-obtained money for the federal and state governments. Defendant has taken the legally–and factually–unsupportable position that because the SDNY Relators are not the sole relators in the *Kelschenbach* Settlement, they are not entitled to fees. This is false, as Defendants specifically sought to include the SDNY Relators' claims in their settlement, the SDNY Relators are the sole whistleblowers to provide substantiated claims

---

[1] On May 13, 2016 the Department of Justice reached a global settlement in *Keisha Kelschenbach* v. *M&T Bank Corp.*, No. 13-cv-00280-WMS ("*Kelschenbach*"), a *qui tam* action which involved many of Relators' claims, providing Defendant M&T Bank with releases for a substantial portion of the claims in *Patrick Lester, et. al v. Appraisal.com, et. al*, 13-*cv*-7952 ("*Lester*"). However, as Relators were not a party to the settlement, on July 18, 2016, Relators filed a Non-Party Motion to Intervene. However, before the motion could be heard, on July 25, 2016, Relators entered into a settlement agreement with the *Kelschenbach* relators for a portion for the relators' award. As this settlement confirmed Relators' status as a prevailing party pursuant to 31 U.S.C. § 3730(d)(1), Relators were entitled to seek attorneys' fees and costs. On October 17, 2016, Relators filed a separate Motion to Intervene for the Limited Purpose of Seeking Attorneys' Fees and Costs, which has been fully briefed and is currently awaiting a decision.

concerning appraisal fraud, and the WDNY Relators, with the Government's approval, have already settled with the SDNY Relators, thereby recognizing their status as legitimate whistleblowers.

In investigating, litigating and negotiating this case for over four years, the SDNY Relators incurred reasonable attorneys' fees, costs and expenses in the total amount of $506,005.84.[2]

The attorneys' fees and expenses sought by Stone & Magnanini LLP ("S&M") in this application are based on contemporaneous, detailed time records and prevailing market rates, comporting with relevant and controlling False Claims Act cases.  The records, together with the skill and experience of the SDNY Relators' counsel and the crucial role they played in successfully resolving the case, demonstrate the reasonableness of the lodestar amount of attorneys' fees and expenses requested.

Accordingly, the requested amount of $426,365.34 should be awarded to the SDNY Relators' counsel, based on its reasonable fee calculation, reimbursement of which by the losing party is mandated by the Act.  Moreover, an additional $65,237.50 should be awarded for the reasonable hours expended on this fee application by S&M's attorneys and staff, along with $14,403.00 in costs, for a total of $506,005.84.

---

[2] Moreover, Defendant is responsible for paying the fees and costs associated with Relator litigating this fee dispute under clear Second Circuit authority. *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06 cv 15296 (LAK) (FM), 2016 U.S. Dist. LEXIS 104412, at *32 (S.D.N.Y. Aug. 5, 2016) ("The time reasonably spent bringing a fee application under the FCA generally is compensable."); *see infra* Part III.  Stone & Magnanini LLP has been litigating this fee dispute since mid-2016,  and its attorneys' fees and expenses amount to $65,237.50 as of February 7, 2017.  As part of the instant fee application, Stone & Magnanini requests that these fees and costs (which continue to accrue) be paid.  Any additional fees and costs incurred in drafting the reply papers on this motion will be included with a supplemental declaration accompanying Stone & Magnanini's reply brief.

## BACKGROUND

The SDNY Relators are insiders who provided detailed factual allegations as to how M&T wrongfully obtained and altered appraisals in its origination of loans for the FHA program. Relator Patrick Lester ("Lester") worked for M&T for over twenty-five years, and observed this fraudulent conduct, at least as early at 2004, as an employee at the highest levels of M&T's appraisal department. (SDNY Compl., ¶ 132 – attached to the Declaration of Robert Magnanini, Esq., at Ex. 1 ("Magnanini Dec.")). In 2010, Mr. Lester attempted to halt these practices by reporting these and other activities to M&T's Chief Auditor, Appraisal Manager, and Senior Vice President. (SDNY Compl., ¶¶ 138, 141). In May 2011, M&T terminated Mr. Lester, and he reported the appraisal fraud scheme to the Securities & Exchange Commission ("SEC") under the SEC Whistleblower Program.

In November 2013, the SDNY Relators, Mr. Lester, along with Ms. Miller and Ms. Myers – both of whom worked for M&T's appraisal management company -- filed a *qui tam* complaint alleging M&T's fraud in its appraisal practices and false certifications to the FHA. Shortly after filing the SDNY Complaint, the SDNY Relators met with United States Attorney's Office and disclosed M&T's fraudulent conduct. Those allegations were the first-filed claims that M&T was systematically, falsely certifying to the integrity of its appraisals. Relators' early reporting and perseverance falls squarely with the qualities of a quintessential whistleblower that the *qui tam* provisions were designed to award.

However, while the SDNY Relators were progressing with their claims and cooperating with the United States Attorney's Office, the Government intervened in a separate *qui tam* complaint filed in this Court ("WDNY Complaint") in March 2013 by Keisha Kelschenbach ("WDNY Relator"), who alleged generally that M&T's underwriting practices were improper

3

and that M&T falsely certified compliance with "Government Programs." The WDNY Relator did not allege, anywhere in her complaint, the time period when this so-called conduct occurred, or that M&T falsely certified compliance with any specific provisions of the "Government Programs." Rather, the WDNY Relator alleged generally that M&T violated the FCA by causing the approval of M&T residential mortgages "as quickly as possible," failing to conduct "proper due diligence," and "employing underwriters who were unqualified to properly perform their duties." There is no allegation in the WDNY complaint that the WDNY Relator had first-hand knowledge of any false claims being made, by whom they were made or when they were made.

When the Government initially moved to settled its claims against M&T from the WDNY Relator, it reached out to the SDNY Relators to seek their approval of the settlement and add them as parties to the settlement agreement, and in so doing, the Government acknowledged that the settlement directly released a significant portion of the SDNY Relators' claims in the SDNY Complaint. The Government also disclosed that it confirmed the property appraisal fraud, as described in the Covered Conduct, by identifying a statistically significant error rate over the relevant time period – not from any specific information provided by the WDNY Relator. As the Government's description of the Settlement Agreement's Covered Conduct explains:

> The Department of Justice has investigated M&T with regard to its origination, underwriting, **property appraisal**, quality control, and endorsement practices, as well as its submissions of certifications, related to FHA-insured single-family residential mortgage loans originated between January 1, 2006 and December 31, 2011 [and] M&T certified for FHA mortgage insurance [that was] not eligible for FHA mortgage insurance.

(Emphasis added). That conduct falls directly within the SDNY Complaint's allegations.

Ultimately, the Government reached a settlement agreement with M&T which included a significant number of claims brought by the SDNY Relators. Although the WDNY Relator was listed as the primary relator, the Government did not oppose the SDNY Relators moving for a

share of the relators' award. Moreover, recognizing that their own position regarding appraisal fraud was tenuous at best, the WDNY Relator recognized the SDNY Relators' contributions to the *Kelschenbach* Settlement as the first-filed *qui tam* complaint and provided the SDNY Relators with a significant share of the relators' award.

Accordingly, the SDNY Relators, who solely alleged specific false appraisal claims during a specific time period, propounded the first and only complaint that specifically alleges false claims in connection with fraudulent appraisals, false certifications concerning those appraisals to the FHA, and during the specific time period described and covered by the Government's settlement. Under well-established law, the SDNY Relators are thus entitled to the full recovery of attorneys' fees in regards to this action.

## ARGUMENT

By reaching a settlement with the Government for the WDNY Relator's *qui tam* claims and for a significant portion of the claims which make up the SDNY Relators' complaint, M&T has conceded responsibility for defrauding the government and is thus liable for all attorneys' fees spent investigating and litigating both of these actions. The FCA provides in stark language that any positive outcome, including settlements of any kind, constitute a successful resolution and grant plaintiffs the right to recover all attorneys' fees and expenses.

**I.     SECTION 3730(D)(1) OF THE FALSE CLAIMS ACT MANDATES THAT *QUI TAM* PLAINTIFFS RECOVER ATTORNEYS FEES AND EXPENSES.**

The False Claims Act provides that a *qui tam* plaintiff, in addition to receiving a percentage of any proceeds the government receives from the action, "*shall . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.*" 31 U.S.C. § 3730(d)(1) (emphasis added). These fees and costs are to be awarded against the defendant. *Id.*; *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 614

(6th Cir. 2007) ("The False Claims Act, 31 U.S.C. § 3730(d), provides for fee-shifting and includes both attorneys' fees and expenses as part of the award to a successful *qui tam* plaintiff").   A successful *qui tam* relator includes one who recovers through settlement, both under the plain text of the statute and case-law.   *See, e.g.*, *U.S. ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342 (D. Mass. 2002) (settling relator is considered a prevailing party under the FCA and thus awarding fees); *U.S. ex rel. ATC Distrib. Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150, 2007 U.S. Dist. LEXIS 65963 (S.D.N.Y. Sept. 7, 2007) (awarding attorneys' fees to a settling relator); *U.S. ex rel. Greendyke v. CNOS, P.C.*, No. CIV 04-4105, 2007  U.S. Dist. LEXIS 72987 (D.S.D. Sept. 27, 2007) (same).

## II.   THE AMOUNT OF ATTORNEYS' FEES REQUESTED IS REASONABLE AND SHOULD BE APPROVED BY THE COURT.

### A.   *The Lodestar Method*

Federal courts have repeatedly held that the only proper method for determining attorneys' fees is to calculate the lodestar amount.  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 888 (1984).   The Supreme Court explained in *Blum* that the lodestar is to be calculated by multiplying the total number of attorney hours expended on the case by the reasonable hourly rate that persons of equivalent experience and quality are charging in the relevant community. *Blum*, 465 U.S. at 896.   "When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, *the resulting product is presumed to be the reasonable fee . . .*"  *Id.* at 897 (emphasis added).   Congress has made clear that in calculating attorneys fees under the False Claims Act, "[t]he term 'reasonable attorneys fees' is intended to incorporate the standard applied in the United States Supreme Court case of *Blum v. Stenson* . . . ." Cong. Rec. (Oct. 7, 1986) at H9389 (statement of Rep. Berman); *see also Burr v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F. Supp. 166, 169 (M.D. Fla. 1995) (federal courts have applied the lodestar methodology in determining attorneys' fees in FCA cases).

**B.      The Inquiry in the Second Circuit**

The lodestar – or as sometimes referred to in the Second Circuit, the "presumptively reasonable fee" – is arrived at by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill v. Cnty. of Albany and Albany Cnty. Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The reasonable hourly rate is calculated so as to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832 (JGK) (KNF), 2010 U.S. Dist. LEXIS 101597, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010) (quoting *Blum*, 465 U.S. at 896 n.11).  The Court may also factor into its determination:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such an reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (relevant factors, as adopted in the Second Circuit, include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).  However, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 110 (E.D.N.Y. 2013). (quoting

*Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)).   A plaintiff's degree of success is measured both in terms of "the quantity and the quality of the relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [the] complaint," and the court's evaluation of this factor is "not limited to inquiring whether a plaintiff prevailed on individual claims." *Barfield*, 537 F.3d at 152 (internal citations and quotation marks omitted).

For the second half of the lodestar calculation, to determine whether the number of hours spent by Relator's counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 U.S. Dist. LEXIS 42232, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

Once the lodestar has been calculated, further adjustment should be allowed in those cases where "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"   *United States ex rel. Doe v. Acupath Labs., Inc.*, No. CV 10-4819 (LDW) (AKT), 2015 U.S. Dist. LEXIS 34506, at *10 (E.D.N.Y., Feb. 27, 2015) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010)).   Finally, in those cases involving partial success, "A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997).

Thus, governing case law prescribes a three-part inquiry:  (1) are the claimed hourly rates of counsel reasonable; (2) are the number of hours claimed reasonable; and (3) are there additional factors warranting an adjustment in the overall fee award?

>    i.    *The Rates Charged in this Case are Reasonable*

>      a.   ***S&M's Attorneys' and Paralegals' Rates Are Reasonable for the Relevant Market Based on their Skill, Experience, and Reputation.***

>        i.  **Mr. Stone and Mr. Magnanini (Managing Partners)**

In light of Mr. Stone's and Mr. Magnanini's customary billing rates, and their breadth of experience, there is no reason to disturb their hourly rates.

Mr. Stone and Mr. Magnanini's extensive experience in complex commercial litigation and False Claims Act practice is hard to rival. *See* Magnanini Dec., ¶¶7 to 24 (discussing biographical information and qualifications of both Mr. Stone and Mr. Magnanini). Their long experience representing relators in False Claims Act cases has included some of the largest recoveries in history: Medco ($165 million), Bristol Myers Squibb ($425 million), Cephalon ($350 million), McKesson ($360 million), Janssen ($2.2 billion), and GlaxoSmithKline ($3 billion). Magnanini Dec., ¶12, ¶22. Currently, both attorneys are handling numerous False Claims Act cases venued throughout the country, both sealed and unsealed, in areas from health care to education to defense contracting.

Here, Mr. Stone and Mr. Magnanini took the lead in providing strategic legal guidance and negotiation strategy for their litigation team. In doing so, they relied heavily upon their past experience in the field.

In light of their respective roles in the case, as well as their skill, experience, and reputation, Mr. Stone's and Mr. Magnanini's fees are reasonable. First, it is important to note that their fees are based on their respective customary rates from the time when the work was performed – despite the fact that their current rates are now higher than those previously incurred. *See generally Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ("Clearly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.").

Moreover, their hourly rates are by no means out of line with those currently charged by similarly situated attorneys, and indeed awarded by local courts.  Thus, the current $850 hourly rate for Mr. Stone and the current $720 hourly rate for Mr. Magnanini are well within the range of market rates of nationally recognized litigators in New York and elsewhere.  A recent survey released by the National Law Journal about billing rates of law firms in New York conclusively demonstrates that S&M's attorney and paralegal hourly billing rates are well within the range of billing rates charged by New York firms:

| Partners | Up to $1,295 – Median $420 |
|---|---|
| Associates | Up to $975 – Median $350 |
| Counsel | Up to $930 – Median $573 |
| Paralegals | Up to $325 – Median $130 |

(*See Billing Survey*, National Law Journal, 2015, annexed to the Magnanini Dec. as Exhibit 4).  Respectfully, S&M's attorneys' experience, credentials, and reputation rightfully place them in the higher end of these ranges.  As does the fact that the firm, particularly Mr. Magnanini and Mr. Stone, has extensive experience in the niche FCA field.

And while the relevant inquiry is market rate, and there is no special lower rate for court-awarded fees, the rates charged are also commensurate with fee awards to similarly experienced (and no more credentialed) attorneys in New York's courts.  *See, e.g., U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275 (DLC), 2015 U.S. Dist. LEXIS 49477, 2015 WL 1726474, at *2-3 (S.D.N.Y., Apr. 15, 2015) (judge approved hourly rates in an FCA case of $836 for a partner with twenty years experience); *U.S. ex rel. Doe v. Acupath Labs, Inc.*, Civ. 10-4819 (LDW) (AKT), 2015 U.S. Dist. LEXIS 34506, at *25-26 (E.D.N.Y., Feb. 27, 2015) (in an FCA case in the Eastern District, the Court awarded a senior litigator a fee range of $450 to $600 per hour, and a junior partner a fee range of $250 to $375 per hour); *U.S. ex rel. Bisk v. Westchester Med. Ctr.*, 2016 U.S. Dist. LEXIS 104412, at *24 (S.D.N.Y., Aug. 5, 2016) (in an FCA case, awarding a senior partner fees ranging from $500 to $650 per hour, a junior partner hourly rates

ranging from $300 to $450, and another partner $500 per hour).  Indeed, recent cases in New York have found reasonable partner rates at $870 per hour, *Themis Capital v. Democratic Republic of Congo*, No. 09cv1652 (PAE), 2014 U.S. Dist. LEXIS 124208, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied*, No. 09cv1652 (PAE), 2014 U.S. Dist. LEXIS 133671, 2014 WL 4693680 (S.D.N.Y. Sept. 22, 2014), and $815 per hour, *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13cv2493 (KBF), 2014 U.S. Dist. LEXIS 135600, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014).

Accordingly, in New York fora, market rates commensurate to – and even above and beyond – Mr. Stone's and Mr. Magnanini's rates are awarded as a matter of course.  To suggest that their hourly rates are unreasonable flies in the face of the reality that practitioners in New York's federal courts charge these rates routinely, and federal judges routinely give the rates their blessings.  Most notably, it flies in the face of the fact that the claimed rates here are Mr. Stone and Mr. Magnanini's actual market rates, which are persuasive here given the express language of the statute, the guidance of the Supreme Court and other governing precedent.

### ii.  Mr. Harrison (Partner)

Nor is there any reason to disturb the billing rate of Mr. Harrison, who was a partner at the firm during the relevant time period.  *See* Magnanini Dec., ¶¶25 to 31 (discussing biographical information and qualifications of Mr. Harrison).  As discussed above – both in the billing survey information and in the cited New York case-law, Mr. Harrison's rate was in line with the rates of similarly situated partners and counsel at New York law firms.  Moreover, like Mr. Stone and Mr. Magnanini, Mr. Harrison has extensive False Claims Act experience – which warrants particular consideration given this remains a niche area of the law.

### iii.  Mr. Barnett-Howell and Mr. Muller (Associates)

The Associate billers on this case also have reasonable hourly rates based on their respective skills and experience.  Mr. Barnett-Howell and Mr. Muller have graduated from

excellent law schools, are licensed to practice in multiple jurisdictions, and have varying experience handling all aspects of complex commercial litigation – including Mr. Barnett-Howell's extensive experience in False Claims Act matters.  *See* Magnanini Dec., ¶¶32 to 45 (discussing biographical information and qualifications of S&M's Associate billers).

The National Billing Survey, as discussed in the table above, demonstrates that S&M's associate-level rates are near the median, and all are below the high end of the range.  Magnanini Dec., Ex. 4.  Moreover, S&M's requested rates are in line with those recently awarded other associate-level attorneys in New York cases.  *See, e.g., Fox Rx, Inc.*, 2015 U.S. Dist. LEXIS 49477, 2015 WL 1726474, at *2-3 (judge approved hourly rates in an FCA case of $631.75 for an eighth-year associate, and $541.50 for a fourth-year associate); *Bisk*, 2016 U.S. Dist. LEXIS 104412, at *24 (in an FCA case, awarding $300 per hour for associates' time); *Themis Capital*, 2014 U.S. Dist. LEXIS 124208, at *21 (awarding ten associates $505.55 per hour).

### iv.   Ms. Saybe and Mr. Rawson (Paralegals)

The Paralegal billers on this matter also have rates that are reasonable based on their respective skills and experience.  Our paralegals have worked for large law firms handling massive and complex litigation matters.  *See* Magnanini Dec., ¶¶46 to 59 (discussing biographical information and qualifications of S&M's Paralegal billers).

Our paralegals' rates all fall well below the high-end of the New York range, and indeed are close to the median.  *See* Magnanini Dec., Ex. 4.  Moreover, S&M's rates for its paralegals are in line with recent New York case-law.  *See, e.g.*, *TufAmerica, Inc. v. Diamond*, No. 12 Civ. 3529 (AJN), 2016 U.S. Dist. LEXIS 30645, 2016 WL 1029553, at *6 (S.D.N.Y., Mar. 9, 2016) ("Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour.");  *Tabatznik v. Turner*, No. 14 Civ. 8135 (JFK), 2016 U.S. Dist. LEXIS 42972,

2016 WL 1267792, at *12 (S.D.N.Y. Mar. 30, 2016) (awarding paralegals an hourly rate of $200) (collecting cases); *Bisk*, 2016 U.S. Dist. LEXIS 104412, at *24 (in an FCA case, awarding paralegals' fees ranging from $115 to $185 per hour, with a weighted average of $145 per hour).

> **b.  *The Attorneys' and Paralegals' Fees S&M Seeks Are Based On Reasonable Hours As Evidenced By Detailed Time Records, Efficient Staffing And The Absence of Unnecessary Charges.***

The party seeking reimbursement of attorney's fees "must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). A party seeking an award bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (internal citations, quotation marks, and alteration omitted); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) ("all applications for attorney's fees [are to] be supported by contemporaneous records") (internal citations omitted).

Relators have clearly met their initial burden of production by introducing legal bills and the declaration of counsel that the hours expended were reasonable to litigate this case.  The time records presented here were kept at the time that the work was actually performed and accurately record the hours spent.

In assessing the reasonableness of attorneys' time, courts also routinely look to see whether work is efficiently delegated and allocated among the attorneys staffing the case.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-1940, 76 L. Ed. 2d 40, 50-51 (1983) ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

ethically is obligated to exclude such hours from his fee submission.").  Relators' counsel staffed this case very efficiently.  For the majority of this matter, only two attorneys were principally staffed on this case (Mr. Magnanini and Mr. Harrison).  Once Mr. Harrison left the firm, he was replaced mainly by Mr. Barnett-Howell.  There was little, if any, duplication of effort here. Moreover, as is demonstrated by the time records in this action, small firms like S&M simply do not have the resources to "overstaff" a case.  *See Roberts v. Nat'l Bank*, 556 F. Supp. 724, 728 n. 1 (E.D. Mich. 1983).  These attorneys' tasks did not overlap for the most part, and to the extent they reflect overlap, it is because they worked in collaboration when appropriate.  The same can be said of any other attorneys staffed on this matter.

Indeed, the time spent by S&M attorneys was reasonably necessary for the proper prosecution of this action and was not wasted on frivolous tactics or motions.  The attorneys and other support staff have worked over the past four-plus years of this case, performing many crucial tasks, including investigating allegations against Defendant, drafting the SDNY complaint and disclosure statement containing much of the pertinent evidence, conducting damages analyses, dealing with potential experts, participating in negotiating the settlement agreement, and, most importantly, working with the Government and seeking continually (and successfully) to persuade the Government of the merits of Relators' claims.  In light of the complexity of this fraud matter and based on each attorneys' skill level and experience, each of the attorneys and paralegals spent a reasonable amount of time completing his or her assigned tasks.  Indeed, a comprehensive review of the bills indicates that this litigation, which was ongoing over the course of four years, shows the normal ebbs and flows of litigation, with time concentrated more heavily in certain months and little time expended on the matter in others.

Defendants may object to hours spent by S&M attorneys on legal research. However, in the False Claims Act context, the court in *U.S. ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710 (D. Minn. 2009), sensibly recognized that solo practitioners or attorneys at small firms should be compensated for such research.  The court wrote that "[g]iven the fact that attorneys –

particularly solo practitioners and those from smaller firms – conduct legal research throughout their careers, the Court concludes that Plaintiffs' counsel should be compensated for research". Similarly, in *Fialka-Feldman v. Oakland Univ. Bd. of Trus.*, No. 08-14922, 2010 U.S. Dist. LEXIS 62031 (E.D. Mich. June 23, 2010), the court dismissed an objection to a more senior attorney conducting legal research, noting that the objection "may carry more weight if plaintiff had been represented by a law firm with several tiers of associates and partners." *Id.* at *17-18. There, only four lawyers were employed in an office performing the legal work. *Id.* at *18.

Relator also anticipates an objection to the common and oft-used practice known as "block billing." Such an objection would ignore the fact that "[a]ttorneys...are not required to provide the Court with a detailed accounting of each minute spent performing a task in the case." *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06 Civ. 5487, 2008 U.S. Dist. LEXIS 91674, 2008 WL 4453221, at *10 (E.D.N.Y. Sept. 30, 2008). "Rather, the records produced should be specific enough to assess the amount of work performed." *Id.* (citing *Hensley*, 461 U.S. at 437 n. 12); *see Microban Products Co. v. API Industries, Inc.*, No. 14 Civ. 41, 2014 U.S. Dist. LEXIS 92704, at *12 (S.D.N.Y. July 7, 2014) (counsel need only "identify the general subject matter of [their] time expenditures.") (quoting *Hensley*, 461 U.S. at 437 n. 12). The time records provided here more than meet this threshold. *See also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (affirming district court's conclusion that block billing was reasonable form of documentation); *Fox Rx, Inc.*, 2015 U.S. Dist. LEXIS 49477, *8 ("[t]he use of 'block billing' here is perfectly reasonable; the specific tasks in each 'block' are described with sufficient detail and clarity to confirm 'the reasonableness of the work performed.'") (citation omitted).

Because the attorneys' fees requested are based on reasonable hours, as evidenced by detailed time records, efficient staffing and the absence of unnecessary tasks, S&M's request for those fees should be granted.

### i. No Blanket Percentage Reduction In S&M's Requested Fees Should Be Applied.

It would not be appropriate for Defendant to argue, much less for the Court to accept, that Relator could somehow have reached the same result using less expensive lawyers, or fewer lawyers, or spending less time than what it took in reality.  *See generally*, *e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).  Moreover, inasmuch as Defendant argues that there is some "proportionality" principle that limits fee awards based on a recovery, that argument has been squarely rejected by the courts.  *Morris v. Eversley*, 343 F. Supp. 2d 234, 246 (S.D.N.Y. 2004 ) ("courts have rejected a *per se* proportionality rule, *i.e.* proportionally linking the prevailing plaintiff's attorneys' fees to the degree of monetary success the plaintiff achieved") (internal quotation marks omitted) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986))**.**

### III.    S&M IS ENTITLED TO FEES ASSOCIATED WITH LITIGATING THIS PETITION

S&M is also entitled to the attorneys' fees expended in litigating this fee petition.  *See, e.g., Acupath Labs.*, 2015 U.S. Dist. LEXIS 34506, 2015 WL 1293019, at *15-16; *U.S. ex rel. ATC Distribution Grp., Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150 (GWG), 2007 U.S. Dist. LEXIS 65963, 2007 WL 2522638, at *6 (S.D.N.Y. Sept. 7, 2007).  As noted in the foregoing, it is clear under the Act that counsel is entitled to reasonable attorneys' fees if a relator is a prevailing party, yet Defendant has demurred to S&M's reasonable request.  Accordingly, S&M has included herewith time entries and biographical information for the attorneys and paralegals involved in drafting this fee application (note that Mr. Muller worked on

16

the fee application, but not on the underlying litigation).  The appropriate lodestar for litigating this fee application is $65,237.50.[3]

## IV.    S&M IS ENTITLED TO THE FULL MEASURE OF THE REASONABLE COSTS IT INCURRED IN THIS LITIGATION.

In addition to the attorneys and paralegals' fees sought herein, S&M seeks its reasonable costs that total $14,403.  These reflect the costs and disbursements incurred in relation to the underlying litigation as well as the fee application.  In any action in which a *qui tam* plaintiff receives an award, "such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs shall be awarded against the defendant."  31 U.S.C. § 3730(d)(1) (emphasis added).  S&M has provided appropriate supporting documentation for its costs incurred in this matter.  *See* Magnanini Dec., Ex. 5.  Thus, a cost award is equally appropriate.

---

[3] Please note that this figure will be adjusted upward to reflect the reasonable hours expended on drafting the reply submission to Defendant's opposition to this motion.  Those additional hours will be included with the reply submission for the Court's consideration.

## CONCLUSION

Based upon the successful result that SDNY Relators' counsel obtained in this complex and important case of fraud by Defendant, S&M is entitled to reasonable attorneys' fees and expenses in the amount of $506,005.84, reflecting the reasonable hourly rate and hours that counsel and staff expended on both the underlying litigation and this fee petition.


DATED:  February 8, 2017

Respectfully submitted,

s/ Robert A. Magnanini
Robert A. Magnanini
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel:     (973) 218-1111
Fax:     (973) 218-1106
rmagnanini@stonemagnalaw.com