UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.*
KEISHA KELSCHENBACH,

                              Plaintiffs,

        v.

M&T BANK CORPORATION,

                              Defendant.

**DECISION AND ORDER**
13-CV-280S

        1.      Presently before this Court is Patrick Lester, Marlene Miller, and Pauline

Myers' (the "SDNY Relators") Motion to Intervene for the Limited Purpose of Seeking

Attorneys' Fees.  (Docket No. 69.)[1]  The SDNY Relators filed a *qui tam* action in the

Southern District of New York on November 8, 2013 (the "SDNY Action"), alleging an

appraisal fraud scheme by multiple defendants, including M&T Bank Corporation

("M&T"), in violation of the False Claims Act, 31 U.S.C. §§ 3729–3733 (the "FCA").  See

United States of America *ex rel.* Patrick Lester, Marlene Miller, and Pauline Myers, et al.

v. Appraisal.com, et al., 1:13-cv-07952-LGS (S.D.N.Y.).  The SDNY Relators claim a

right to intervene in this action (the "WDNY Action") in order to seek attorneys' fees from

M&T.  For the following reasons, their motion is denied.

        2.      Keisha Kelchenbach (the "WDNY Relator") initiated the WDNY Action on

March 19, 2013, approximately eight months prior to the SDNY Action.  She also filed a

*qui tam* complaint, alleging that M&T had violated the FCA by making false

---

[1] The motion and related filings were docketed under seal.  (See Docket Nos. 69, 76, 82.)  However, the Sealed Movants' later-filed Motion for Attorney Fees was not sealed and reveals the relevant information that the parties had previously sought seal over, namely, the Sealed Movants' identities and reference to the SDNY Action.  (See Docket No. 88.)  Further, the SDNY Action was unsealed in part on September 28, 2016.  Accordingly this decision is not filed under seal.

representations in connection with its underwriting and origination of Federal Housing Administration ("FHA") insured mortgages.  The WDNY Relator's complaint alleges that, with respect to the alleged underwriting scheme, "[t]he underwriter must have each property appraised in accordance with the standards and requirements prescribed by [the United States Department of Housing and Urban Development]."  (Docket No. 1, Compl. ¶ 40.)  The WDNY Relator's complaint further alleges that:

> [M&T], improperly and in violation of the requirements of the Government Programs, sought and obtained additional appraisals for purposes of obtaining a higher value on a property.  [M&T] failed to disclose or properly document these instances, but instead simply ignored the first, unfavorable appraisal.

(Id. ¶ 138).

3.      The SDNY Relators, without providing supporting evidence, state that in April 2016, the Department of Justice (the "Government") advised the SDNY Relators that a settlement of the WDNY Action was pending, which would resolve all claims of appraisal fraud against M&T.  They further state that the Government told counsel for the SDNY Relators that it would intervene in the SDNY Action and include the SDNY Relators as parties to the settlement agreement pending in the WDNY Action.  However, the Government did not intervene in the SDNY Action, and instead, on May 10, 2016, filed a notice of intervention in the WDNY Action, together with a settlement agreement signed only by the Government, M&T, and the WDNY Relator (the "Settlement").  (See Docket No. 30.)  The Settlement releases M&T from liability for any federal claims related to M&T's conduct in origination, underwriting, property appraisal, and quality control for FHA loans during the relevant period.  (Id.)  The parties do not dispute that this release extinguishes the SDNY Relators' claims against M&T.

4.      The SDNY Relators filed a notice of voluntary dismissal of the SDNY Action on November 23, 2016, which the Honorable Lorna G. Schofield "so ordered" on November 28, 2016.  (SDNY Action Docket Nos. 19, 21.)  Accordingly, the SDNY Action is now closed.  A significant portion of the SDNY Action's docket remains under seal.

5.      Although the terms of the FCA expressly give relators the right to challenge settlements that are not "fair, adequate, and reasonable," see 31 U.S.C. § 3730(c)(2)(B), the SDNY Relators did not seek a hearing as to the fairness of the Settlement.  Instead, they filed a motion in this Court requesting that they be allowed to intervene for the limited purpose of seeking a share of the relator's award.  (See Docket No. 47.)  Before that motion had even been fully briefed, the SDNY Relators, the Government, and the WDNY Relator all agreed that the SDNY Relators could intervene for the limited purpose of seeking a share of the WDNY Relator's award.  (See Docket No. 53.)  Based on this agreement, and in the absence of any opposition, this Court granted the motion.  (See Docket No. 54.)  Thereafter, the SDNY Relators and WDNY Relator reached an agreement between themselves as to division of the award. (Docket No. 64.)  Nothing has been filed indicating that their agreement resulted in some change to the WDNY Relator's status as the sole relator in the WDNY Action, nor is it clear that such an agreement could change that status.

6.      Now, the SDNY Relators have moved to intervene again, this time in order to seek attorneys' fees from M&T.  (Docket No. 69.)  The SDNY Relators contend that they should be allowed to intervene under Federal Rule of Civil Procedure 24(a)(2), because they are "prevailing parties" under the FCA.  However, as they note, the FCA states:  "When a person brings an action under this subsection, *no person other than*

*the Government may intervene* or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (emphasis added). Both the Fourth Circuit and the Ninth Circuit, interpreting this section, have found that a private party cannot intervene in a FCA suit under any circumstances. See U.S. ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999) (denying motion to intervene by *qui tam* relators in second *qui tam* action); United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1187 (9th Cir. 2001) (rejecting the notion of reading exceptions into the statute's plain language). The Fourth Circuit has held that § 3730(b)(5), on its face and without exception, precludes any person other than the government from intervening: "[t]his provision states without qualification that persons other than the government may not intervene in *qui tam* actions." Id. The Fourth Circuit further observed that, "[b]y drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in *qui tam* suits." Id. The SDNY Relators do not cite, and this Court has not found, any case allowing a Rule 24 intervention in a suit brought under the FCA.

7.     In the alternative, the SDNY Relators contend that they should be allowed to intervene under the "alternate remedy" section of the FCA. That section states:

> Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available . . . . If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5). The Southern District recently stated that "case law interpreting Section 3730(c)(5) in any context is scarce." United States v. L-3 Commc'ns Eotech, Inc., No. 15-CV-9262 (RJS), 2017 WL 464431, at *4 (S.D.N.Y. Feb. 3, 2017). However,

as noted above, the Fourth Circuit has held that § 3730(c)(5) does not create exceptions to the categorical bar of § 3730(b)(5) against private party intervention. LaCorte, 185 F.3d at 191.  Instead, it found that this provision "simply preserves the rights of the original *qui tam* plaintiffs when the government resorts to an alternate remedy in place of the original action" and "does not confer any rights on would-be intervenors."  Id.; see also U.S. ex rel. Fry v. Guidant Corp., No. CIV.A. 3:03-0842, 2006 WL 1102397, at *5 (M.D. Tenn. Apr. 25, 2006) ("Section 3730(b)(5) strictly forbids private parties, such as [the party seeking to intervene], from being added as additional party relators with claims based on the same underlying facts ('intervening') after a *qui tam* action has been filed . . .").

8.      Even if this Court were to depart from the precedent set by the Fourth Circuit and allow the SDNY Relators to intervene in this action, they have not met the basic requirements for pursuing claims under the "alternate remedy" clause.  First, where a *qui tam* plaintiff asserts that an alternate remedy has been procured by the government, there is typically a question of whether the recovery at issue qualifies as an "alternate remedy."  See, e.g., U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 651 (6th Cir. 2003) (remanding complaint seeking share of alternate remedy to the district court to determine whether the government's settlement "overlap[ped] with the conduct alleged by [the] [r]elator in bringing his *qui tam* action," and directing the district court to "hold an evidentiary hearing at which [the] [r]elator and the government may present evidence in support of their positions"); U.S. ex rel. Barajas v. United States, 258 F.3d 1004, 1012 (9th Cir. 2001) (assessing relator's allegations and procedural history and concluding that settlement agreement with government requiring debarment

qualified as an "alternate remedy").

9.      Second, in order to be eligible to seek a qualifying "alternate remedy," the SDNY Relators would need to establish that they were the first-to-file party to satisfy the terms of § 31 U.S.C. § 3730(b)(5).   Courts have interpreted § 3730(b)(5) as a jurisdictional bar to later allegations that state all the "essential facts" of a previously-filed claim or the "same elements of a fraud described in an earlier suit."  United States ex. rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 32 (1st Cir. 2009) (internal quotations omitted).  This is a jurisdictional rule that is "exception-free."  Id. at 33.  The first-to-file rule is intended to "provide incentives to relators to promptly alert the government to the essential facts of a fraudulent scheme."  Id. at 32 (internal quotations omitted).  "Under this 'essential facts' standard, § 3730(b)(5) can still bar a later claim 'even if that claim incorporates somewhat different details.'"  Id. (quoting United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 232-33 (3d Cir. 1998)).

10.     Although this Court has not been provided with sufficient information to assess whether the SDNY Relators should be considered first to file with respect to their appraisal fraud allegations, it notes that Rule 9(b) does not apply to the first-to-file rule. Thus, even if the WDNY Relator's allegations were only generally pled, the first-to-file rule would still bar a subsequent "copy-cat" action.  United States ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1210 (D.C. Cir. 2011) ("We hold that first-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints[.]").  This is because "[first-filed complaints] must provide only sufficient notice for the government to initiate an investigation into the allegedly fraudulent practices, should it choose to do

so."  Id.; see also United States ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28,

35 (1st Cir. 2013) (("[T]he allegations of a preclusive first-filed complaint under §

3730(b)(5) need not comport with Rule 9(b)'s pleading requirements to provide the

government with sufficient notice of potential fraud.").  Without reaching a determination

on this issue, this Court notes that the WDNY Relator's complaint appears to have given

the Government notice of a potential appraisal fraud claim.  (See Docket No. 1, Compl.

¶ 138.)

11.     Third, even if their action were not barred by the first-to-file rule, the SDNY

Relators have not established that theirs is a valid qui tam action.  United States of Am.

& N.Y. State v. N. Adult Daily Health Care Ctr., 174 F. Supp. 3d 696, 700 (E.D.N.Y.

2016).  Although the Second Circuit has not addressed this issue, several other circuit

courts have found that "a valid, particularly pled qui tam action is a prerequisite to

recovering an alternate remedy."  Id. (collecting cases) (citing U.S. ex rel. Newell v. City

of St. Paul, Minn., 728 F.3d 791, 799 (8th Cir. 2013); U.S. ex rel. Godfrey v. KBR, Inc.,

360 Fed. App'x 407, 412-13 (4th Cir. 2010); U.S. ex rel. Hefner v. Hackensack Univ.

Med. Ctr., 495 F.3d 103, 112 (3d Cir. 2007); U.S. ex rel. Bledsoe v. Cmty. Health Sys.,

Inc., 501 F.3d 493, 522 (6th Cir. 2007)).  The Sixth Circuit has stated that "allowing a

relator who failed to plead fraud with particularity to recover proceeds from an alternate

remedy pursued by the government with respect to those fraudulent allegations would

make little sense," as "[q]ui tam proceeds are available not to persons who inform the

government of wrongdoing, but are only available when the government proceeds 'with

an action.'"  Bledsoe, 501 F.3d at 522 (quoting 31 U.S.C. § 3730(d)(1)).  Thus, "[a]bsent

a valid  complaint  which  affords  a  relator  the  possibility  of  ultimately  recovering

damages, there is no compelling reason for allowing a relator to recover for information provided to the government." Id.

12.     Here, again, there has been no evidence provided to this Court demonstrating that the SDNY Relators' action was valid.  A significant portion of the SDNY Action's record remains under seal, and none of the publicly filed documents indicate that the validity of their *qui tam* action has been vetted.  Until it has been determined that the SDNY Relators have stated a claim and have pled fraud with the requisite particularity, they "do not have any right to recovery in their *qui tam* action, and therefore, they also lack any corresponding right to share in an alternate remedy." See N. Adult Daily Health Care Ctr., 174 F. Supp. 3d at 704.

13.     Moreover, the SDNY Relators voluntarily dismissed the SDNY Action on November 23, 2016.  (See SDNY Action Docket Nos. 19, 21.)  Several courts have held that voluntary dismissal of a *qui tam* action bars participation in any later recovery.  In L-3 Communications Eotech, Inc., a first-to-file relator who had voluntarily dismissed his action sought recovery of a portion of a government settlement.  2017 WL 464431, at *1.  The court held that "[the relator]'s decision to voluntarily dismiss his *qui tam* action in 2014 precludes him from clambering back on board for a share of the government's proceeds as though he had never dismissed his own action.  To hold otherwise would contradict the plain language of Section 3705(c)(5) and provide [the relator] with a windfall to which he is not entitled under the statute." Id. at *5. Similarly, in Webster v. United States, the Fourth Circuit denied recovery to a first-to-file relator on the grounds that she could not "assert the rights of an original *qui tam* plaintiff . . . because she abandoned those rights when she voluntarily dismissed her suit." 217 F.3d 843 (table),

2000 WL 962249, at *2 (4th Cir. 2000) (unpublished).  This Court recognizes that these cases are distinguishable, in that each involved a relator who dismissed his or her action prior to a settlement being reached.  Nevertheless, "[r]equiring a *qui tam* plaintiff to make some effort to prosecute her suit in order to participate in any ultimate recovery results in neither unfairness nor the frustration of congressional policy." Id.

14.  Finally, this Court is not persuaded by the SDNY Relators' argument that their motion should be granted simply because they were previously allowed to intervene to seek a portion of the WDNY Relator's award.  First, the SDNY Relators were permitted to intervene only because all of the interested parties consented to their doing so.  Second, their motion to intervene was granted without reference to the FCA. Third, because the WDNY Relator and the Government agreed to allow the SDNY Relators to intervene, the limited intervention did not adversely impact the rights of any interested parties.  Fourth, the SDNY Relators intervened for a limited, unopposed purpose:  to seek a portion of the WDNY Relator's award.  Here, the facts are entirely different.  Not only does the relevant party (M&T) strongly oppose the motion, but allowing the SDNY Relators to intervene could adversely impact M&T's rights.  Further, while the SDNY Relators intervention-by-agreement did not undermine the policy of the FCA, intervention here would. See LaCorte, 185 F.3d at 191 ("Settlements in *qui tam* actions can draw intervenors like moths to the flame.  Congress therefore struck a careful balance between encouraging citizens to report fraud and stifling parasitic lawsuits.") Accordingly, the motion to intervene is denied.

15.  Also pending are the SDNY Relators' Fee Motion (Docket No. 88), as well

as M&T's Motion to Stay the Fee Motion (Docket No. 92).   Having denied the SDNY

Relators motion to intervene, these two motions are denied as moot.


IT HEREBY IS ORDERED, that the Sealed Movants' [69] Motion to Intervene is

DENIED.

FURTHER, that the Sealed Movants' [88] Motion for Attorney Fees is DENIED as

moot.

FURTHER, that Defendant M&T Bank Corporation's [92] Motion to Stay the

Motion for Attorney Fees is DENIED as moot.

SO ORDERED.

Dated: March 20, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge